## CIRCUIT COURT FOR MCMINN COUNTY
### State of Tennessee

TORIE DAWN OTT,                       §
as next of kin and administrator and  §
personal representative               §
of the estate of decedent             §
ALLEN RILEY OTT (Deceased),           §
                                      §        No. 2021-CV-269
                    *Plaintiff*,      §
                                      §
                                      §        **JURY DEMAND**
~v~                                   §
                                      §
CITY OF ATHENS,                       §
                                      §
OFFICER JEREMY BOWMAN,                §
In his individual and official capacities §
as an agent of City of Athens,        §
                                      §
OFFICER BEAU SWAFFORD,                §
In his individual and official capacities §
as an agent of City of Athens,        §
                                      §
                    *Defendants*.     §

### COMPLAINT

"He ain't had no seizure, he's just doing that … thinking it will keep him out of jail."

(Officer Jeremy Bowman on body camera dated 08-24-2020)

PLAINTIFF, Torie Dawn Ott, in her capacity as next of kin, Administrator and Personal Representative of the Estate of Allen Riley Ott ("Deceased"), for the causes of action, will show the Court:

**Introduction:**

1.    This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to Deceased by Fourteenth Amendment to the United States Constitution by the Defendants.



~ 1 ~

DEFENDANT COPY

2. Furthermore, this is an action for the wrongful death of the Deceased while the Deceased was in the custody of the Defendants.

**Jurisdiction and Venue:**

3. This is an action to redress the deprivation of rights secured to Deceased by Fourteenth Amendment to the United States Constitution (enforceable through 42 U.S.C. § 1983) and for violations of Tennessee law.

4. Thus, as to the § 1983 claims, this Court is vested with original jurisdiction pursuant to the authority stated in Haywood v. Drown, 556 U.S. 729, 731 (2009), and Poling v. Goins, 713 S.W.2d 305, 306 (Tenn. 1986).

5. This Court is vested with original jurisdiction over the state claims pursuant to TENN. CODE ANN. § 16-10-101, et seq.

6. Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-102. All acts complained of occurred within McMinn County, Tennessee.

    a. Deceased was a resident of and died within McMinn County, Tennessee.

    b. To the best of Plaintiff's belief, the individual defendants[1] Jeremy Bowman ("Bowman") and Beau Swafford ("Swafford") were residents of McMinn County, Tennessee and conducted their duties as police officers within McMinn County, Tennessee.

    c. The City of Athens ("City" or "the City") is a municipality and political sub-division of the State of Tennessee.

---

[1] When used herein, the term, "individual defendants" shall refer to Bowman and Swafford collectively, and the term "defendants" shall refer to Bowman, Swafford, and the City of Athens collectively.

~ 2 ~

**The Parties:**

7.     Plaintiff avers the individual defendants acted as law enforcement officers, and agents of and were employed by the City and were at all times relevant to this matter acting under color of law and under color of their offices with the City.

8.     Plaintiff maintains the individual defendants committed these violations, further set forth herein, as a result of policies, customs, practices, and/or procedures of the City.

9.     At all times during the events herein described the individual defendants' acts and omissions subjected the Deceased to mental anguish, emotional distress, humiliation, physical injuries, and death.

10.     At all times during the events herein described the individual defendants failed to take action to prevent the Deceased from suffering pain and mental anguish and from enduring humiliation, physical injuries, and death.

11.     Deceased died intestate. Deceased has no surviving issue. Plaintiff is the sister of the Deceased. Plaintiff obtained a letter of administration for cause of action (Ex. A) and an Order appointing Plaintiff as the administrator for legal action only (Ex. B) from the McMinn County Chancery Court, each dated April 23, 2021. Plaintiff is a resident of Bradley County, Tennessee. Plaintiff brings these claims in her representative capacity for the Estate of the Deceased.

12.     There is no other estate open in regard to the Deceased.

13.     At the time of his death, Deceased was not married.

14.     At all times relevant to this cause of action, the City was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

~ 3 ~

a. The City finances its law enforcement department identified and averred as the City of Athens Police Department ("police department" or "department") and provides rules and regulations for the operation of the department.

b. The City provides oversight of the hiring, training, discipline, and retention of all personnel in the department.

c. The City provides monetary resources to fund the daily operations of the department.

15. Additionally, at all times relevant to this cause of action, the City is responsible for the creation and maintenance of the department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

a. The safe and humane treatment of all persons taken into and held in the custody of its police officers, including the individual defendants;

b. The training and certification of its police officers, including the individual defendants;

c. The safety of persons detained or otherwise within the custody of its individual officers and agents, including the individual defendants;

d. To properly and promptly investigate claims of misconduct by its officers and to ensure that officers who pose a risk of harm to the Deceased in particular and the public as a whole, are not depriving persons in their custody of constitutionally protected rights;

e. To properly screen and vet anyone who applies for employment with the department and to not hire any applicant who has a history of violent

~ 4 ~

and/or criminal behavior or retain any employee who, while employed, displays a pattern of violent and/or criminal behavior; and

f.    To properly train and supervise its officers to not refuse to seek medical care for persons who are in physical distress while in the custody of their officers.

16.    Plaintiff brings this action against the City.

17.    At all times relevant to this cause of action, the City employed the individual defendants as law enforcement officers. The individual defendants acted under the color of their respective offices and under the color of law, statute, ordinance, regulation, custom, or usage of the City. In addition:

a.    At all times relevant to this cause of action, the individual defendants acted in their official capacities as employees for the City as defined under TENN. CODE ANN. § 29-20-102(2).

b.    At all relevant times, the individual defendants lent to each other the authority of their respective offices in furtherance of their joint acts and omissions as set forth herein.

c.    Plaintiff sues Bowman and Swafford in their individual and official capacities.

**Factual Basis:**

18.    On August 24, 2020, Bowman and a Corporal Kristen Warren (a police officer of the City, hereinafter "Warren") encountered the Deceased at a car wash in what Bowman stated in a police report ("the report" or "report") as a "medical call" with the Deceased "taking too much medication."

~ 5 ~

19.     Paramedics arrived shortly after Bowman and Warren arrived.

20.     Deceased displayed outward signs of physical injury, and he told Bowman and Warren that he had been assaulted by a "white male wearing a black shirt," and he was hallucinating by hearing voices.

21.     Bowman suspected the Deceased had consumed something to make him act as he did, and Bowman asked the Deceased, "what had he taken?"

22.     Deceased told Bowman that he had consumed "twenty" Wellbutrin, and Bowman replied that that Wellbutrin "would not have that effect on him." Bowman was not at the time of the events depicted herein qualified in any manner to render such an opinion.

23.     Bowman placed the Deceased under arrest "without incident" and walked the Deceased to a police car.

24.     Bowman, falsely claimed in the report that the Deceased "started acting like he could not walk and fell to his knees, and would not comply with my commands to stand up."

25.     The truth was that the Deceased was under severe medical distress that prevented him from walking on his own.

26. ·    The Deceased was visibly and audibly under medical distress.

27.     The Deceased requested to go to the hospital, and the EMTs assisted the Deceased onto a gurney and into the back of the ambulance. One of the EMTs is identified through records held by American Medical Response as Lance McConkey, a paramedic (hereinafter "McConkey"), and the other identified as Whitney Howard, an advanced EMT.

28.     At no time during the encounter at the car wash was the Deceased violent or belligerent, nor did he ever act in such a way as to lead any reasonable police officer to believe that he was a threat of harm to anyone.

~ 6 ~

29.     The EMT's transported the Deceased to Starr Medical Emergency Room ("Starr"), where he was examined by medical personnel at Starr.

30.     During the short time at Starr, the Deceased was continually in the custody of Bowman.

31.     Shortly after Deceased and Bowman arrived at Starr, Swafford arrived. The Deceased remained in a gurney. Bowman walked away from the Deceased and spoke with Swafford who asked Bowman about a "zit" on his face.

32.     Swafford then entered a restroom where he began to pick at his face.

33.     Bowman remained a few feet away from the Deceased as the Deceased remained motionless in the gurney.

34.     Bowman then engaged in conversation with an unidentified person after Swafford left to go to the restroom.

35.     During the short time at Starr, the Deceased presented no threat of harm or violence toward anyone.

36.     Upon examination by Starr medical personnel, said personnel "discharged [Deceased] to police protective custody."

37.     Swafford, Bowman, McConkey and the Deceased exited the emergency room doors of Starr, and while nearly directly underneath a big red lighted sign, AMBULANCE, and within feet of the same emergency room doors, the Deceased began to collapse.

38.     Bowman and McConkey were working to get the Deceased into the right rear door of Bowman's police car. At no time was the Deceased acting in a violent manner nor was he resisting any efforts by Bowman and McConkey to place the Deceased into the police car.

~ 7 ~

39.     This entire time, Bowman had restrained the Deceased's hands behind his back in handcuffs.

40.     Swafford approached Bowman and McConkey as they were manipulating the Deceased into the police car.

41.     Swafford asked if the deceased was not cooperating, and Bowman replied, "He's just acting like he can't get in the car, that's all he's doing."

42.     However, the Deceased was showing outward signs of medical distress that required immediate medical attention.

44.     Bowman and McConkey placed the Deceased into the back seat of the patrol car, face down, and while the Deceased's hands were still cuffed behind his back.

45.     McConkey stated "I'll go pull him through" and walked to the driver side of the police car, and opened the back diver side door.

46.     McConkey then reached in and pulled the Deceased, who remained face down and handcuffed with hands behind his back, across the rear seat, and toward McConkey.

47.     Bowman remained on the right side of the police car and pushed the Deceased to the left and toward McConkey.

48.     Swafford stood behind McConkey, laughed, and used his flashlight to light up the Deceased, which made the Deceased and his physical condition clearly visible.

49.     McConkey and Bowman's efforts caused the Deceased's head to go beyond the frame of the police car, and his head hung downward.

50.     The Deceased then briefly cried out, and began to uncontrollably spasm and shake, and forcefully struck his face on the bottom of the patrol car.

51.     McConkey told the Deceased to "get you're a*# back in there, quit."

~ 8 ~

52.     Swafford and McConkey then together pressed the still cuffed and face-down deceased onto the rear seat.

53.     Other than the one brief outcry, the Deceased made no other verbal sounds beyond gurgling, gasping, and wheezing sounds.

54.     While Swafford and McConkey continued to press the Deceased face down, the Deceased's entire body was shaking uncontrollably.

55.     Swafford asked McConkey, "Is he actually having a seizure?"

56.     McConkey replied, "I don't think so."

57.     After several seconds of this shaking while being pressed down by McConkey and Swafford, the Deceased jerked a few more times and went limp.

58.     Swafford stated "maybe he had a seizure" and Bowman, who was now on the driver side of the police car said "he ain't had no seizure … thinking it will keep him out of jail."

59.     The Deceased then made gasping and wheezing noises, and his head was close to touching the pavement due directly to the actions of McConkey, Bowman, and Swafford.

60.     The Deceased remained in the face down position and handcuffed and while still hanging downward, causing further pressure on the Deceased's diaphragm and abdomen, he continually made the same gasping and wheezing noises. Swafford and Bowman casually engaged in conversation mere inches from the Deceased and still directly under the AMBULANCE sign. McConkey was behind Bowman. All three merely looked at the Deceased during these moments as they chatted and made comments about the Deceased.

61.     Bowman leaned against the open door that Deceased hung out from, and he and Swafford continued to engage in casual conversation, which included Swafford asking Bowman

~ 9 ~

if he was taking the Deceased to jail, and Bowman's response that he was taking the Deceased to jail.

62.     Bowman continued to opine to Swafford that the Deceased was faking to keep out of jail.

63.     Swafford stated that the Deceased was bleeding, and that the Deceased had hit his nose.

64.     At no time did Bowman or Swafford seek any medical attention from anyone including McConkey for the Deceased after these events and despite the visible bleeding.

65.     Notwithstanding being mere feet from an emergency room staffed with medical professionals and life saving equipment, Bowman and Swafford merely looked at the Deceased and continued in casual conversation.

66.     The conversation went to Swafford asking "this is the guy from Clearwater" and Bowman replying yes. Swafford then said "ok ok I know who it is now."

67.     The entire time that Swafford and Bowman were conversing, the Deceased, in the same position as stated, was silent and did not respond to Bowman's question, "can you sit up?"

68.     Bowman stated, "what a damn night," then the Deceased began spasming again striking his head on the door frames as Swafford shined his flashlight on the Deceased.

69.     Bowman, Swafford, and McConkey pushed the Deceased back into the police car, shut the doors, and Swafford said they would have to "Code 3" to the "justice center," which is the location of the jail. Either Bowman or Swafford thanked McConkey for his "help" in pushing the Deceased into the car and shutting the doors.

70.     "Code 3" is Athens police radio language meaning to run police car lights and sirens, as if in an emergency.

~ 10 ~

71.     Swafford and Bowman left the Deceased, face down, cuffed with his hands behind his back on the back seat of Bowman's police car. The Deceased then became limp and remained that way until they arrived at the jail.

72.     Bowman radioed the dispatcher, and falsely stated that the Deceased was "extremely combative."

73.     Swafford got on his cell phone and called a "Krissy," said that "he's hurting hisself, and we need to get there pretty quick." Krissy asked what Deceased was doing, and Swafford stated that the Deceased was hitting his head, then falsely stated that the Deceased was "kicking at us."

74.     Krissy then stated that the individual defendants could stop and strap the Deceased in, and Swafford replied that they had nothing to strap him in with.

75.     Krissy then asked about a seat belt, and Swafford said "a seat belt won't hold him."

76.     Krissy replied that a seat belt will hold the Deceased, then began to describe how to use the seat belt to hold the Deceased, whereupon Swafford dismissively stated: "All right Krissy we'll just deal with it." At no time did Swafford or Bowman sit the Deceased upright and seatbelt him.

77.     Swafford ended the call with Krissy, and he and Bowman left the emergency room and ran a "Code 3" to the jail.

78.     Upon arrival at the jail sally port, the Deceased was pale with blotches of purple in color, his face bloody, damaged, and a deep purple. As Bowman and Swafford pulled the limp and unresponsive Deceased from the back of Bowman's police car, Swafford and Bowman realized that the Deceased was not breathing.

~ 11 ~

79.     The Deceased was actually dead or so near death that any chance for medical care to save him was gone.

80.     Only now did the individual defendants seek medical attention for the Deceased.

81.     The sally port became a beehive of police activity by members of the jail staff. Bowman made false and improbable statements to jail staff that the Deceased was violent with him and Swafford by "kicking"

82.     Despite overwhelming video evidence to the contrary Swafford and Bowman made false statements in a police report wherein they claimed that the Deceased was "passively resisting" (part of Swafford's and Bowman's false claims) and was "kicking." To be sure, Bowman stated in the report more concern about Deceased causing damage to the police car than the Deceased's welfare.

83.     An autopsy of the Deceased found the cause of death was due to acute methamphetamine and bupropion (antidepressant) toxicity. The autopsy revealed the levels of bupropion were lethal, and the manner of death was an accident.

84.     Despite a Tennessee Public Records demand to Athens Police Chief Couch on behalf of the Plaintiff by counsel dated June 29, 2021 for the personnel and training records of Swafford and Bowman, and for the department's policies and procedures, the City nor anyone on the City's behalf has provided the records.

85.     Prior to June 29, 2021, Plaintiff made attempts to obtain records that dragged out for weeks.

86.     The statute of limitation expires in this matter on August 24, 2021.

87.    Based upon information and belief, Swafford and Bowman have remained and continue to remain employed as police officers with the City, without any discipline as a result of their unlawful actions against the Deceased.

## Count One:
**Wrongful Death - TENN. CODE ANN. § 20-5-106**

88.    Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein. Based upon the Plaintiff's belief, the actions and omissions of the individual defendants contributed to the death of the Deceased.

89.    While in their custody, the individual defendants were fully aware the Deceased was under physical distress, and had injured himself during the distress all while mere feet from the people and equipment who could have saved the Deceased.

90.    Instead, the individual defendants placed the Deceased into a positional asphyxia situation, and raced to the jail.

91.    The City has a duty to train the individual defendants to seek medical care for persons who are injured while in the custody of its officers. The City also has a duty to ensure that it supervises the individual defendants to ensure they seek medical care for persons who are injured while in the custody of its officers. The callous actions of the individual defendants are direct evidence of the City's failures to train and supervise.

92.    The acts and omissions of the individual defendants were the direct and proximate cause of the Deceased's death, pain, and suffering.

93.    Plaintiff sues the individual defendants in their individual and official capacities and the City pursuant to the Governmental Tort Liability Act and the common law of the State of Tennessee.

**Count Two:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Failure to Render Aid**

94.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully
set forth herein.

95.     The individual defendants had a duty of care to the Plaintiff by reason of their
deprivation of Plaintiff's liberty, and thus inability to care for himself.

96.     The individual defendants knew the Deceased was injured and under medical
distress, but willfully chose to ignore his helpless condition.

97.     Instead, the individual defendants chose to "Code 3" to the jail.

98.     Swafford dismissed the admonitions of "Krissy," whom Plaintiff believes was the
same Corporal Kristen Warren. Had the individual defendants done as directed by Krissy, they
would have had the opportunity to see the depth and severity of the Deceased's dire physical
condition.

99.     Both Bowman and Swafford were of lesser rank than Krissy.

100.    The City failed to provide records as required in the time frame under Tennessee
law pursuant to a lawful and proper request on behalf of Plaintiff. Consequently, the Plaintiff's
only assumption based upon the circumstances (false statements by Swafford and Bowman, lack
of response to Deceased's situation, Swafford's disregard of "Krissy's" directives, continued
employment of the individual defendants, Swafford and Bowman's dehumanization of the
Deceased during their casual conversation as the Deceased struggled in front of them for life, and
the failures of the City to provide records) is that the City created an environment where the
individual defendants could act or not act as they did here with the knowledge they would not be
disciplined. Plaintiff further avers the delays in obtaining any records, and the lack of response to

~ 14 ~

the public records request was an attempt to delay Plaintiff and thus pass the one-year statute of limitation to file suit.

101. The City has a duty to train the individual defendants to seek medical care for persons who are injured or displaying physical distress while in the custody of its officers. The City also has a duty to ensure that it supervises the individual defendants to ensure they seek medical care for persons who are injured or displaying physical distress while in the custody of its officers.

102. The callous actions of the individual defendants are direct evidence of the City's failures to train, supervise, discipline, and coupled with the deliberate delays in providing records, constitutes deliberate indifference to the welfare of the Deceased, and constitutes a policy and practice that was the driving force behind the deprivations seen here.

103. The acts and omissions of the defendants were the direct and proximate cause of Deceased's injuries both physical and mental, needless suffering, disfigurement, loss of enjoyment of life, and death.

104. No reasonable law enforcement officer would have acted in this manner.

105. The individual defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the City deprived the Deceased of his rights secured to him under the Fourteenth Amendment to United States Constitution to be free from injury and/or death while in their complete custody and control.

106. Plaintiff sues the City and sues the individual defendants in their official and individual capacities.

**Count Three:**
**Intentional Infliction**
**of Emotional Distress**

~ 15 ~

107.    Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

108.    At the time of the events averred in this Complaint, a special relationship existed between the individual defendants and the Deceased.

109.    Despite their full knowledge of the pain and harm their actions caused Deceased during their encounter with the Deceased, the individual defendants merely stood and watched the Deceased struggle to live, further contributing to the Deceased's mental anguish.

110.    No reasonable officer or person would have acted in this manner toward the Deceased.

111.    As a direct and proximate cause of the individual defendants' acts and omissions, Deceased suffered mental injury prior to his death.

112.    Plaintiff sues the individual defendants in their individual capacities under this Count.

WHEREFORE, the Plaintiff demands judgment against the Defendants both joint and several and requests the following relief:

A.    The omissions of the City constituted willful and wanton indifference to and with deliberate disregard for the constitutional civil rights of the Deceased. Thus, the Plaintiff is entitled to actual damages, and attorney fees pursuant to 42 U.S.C. §1988.

B.    The individual defendants committed their acts against the Deceased with actual malice toward the Deceased and with willful and wanton indifference to and with deliberate disregard for the constitutional civil rights of the Deceased. Thus, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

~ 16 ~

C. The Court to enter judgment against the Defendants and to award Plaintiff compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000).

D. The Court to enter judgment against the individual defendants and to award Plaintiff punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000).

E. That the Court award costs, and discretionary costs.

F. Any other relief the Court may deem fit and proper.

G. Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. § 1988, and

H. Allow a jury trial on all issues.

Respectfully submitted,

Respectfully Submitted:

By: _____

**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff
    4110-A Brainerd Road
    Chattanooga, TN 37411
    O: (423) 267-1575
    F: (423) 267-2703
    robin@robinfloreslaw.com

THOMAS & THOMAS

By: _____ (by permission)

**W. NEIL THOMAS, III**
**TENN. BPR #4536**
Attorney for Plaintiff
    6148 Lee Highway, Suite 115
    Chattanooga, TN 37421
    O: (423) 910-9100

~ 17 ~

# IN THE CHANCERY COURT OF MCMINN COUNTY, TENNESSEE

IN THE MATTER OF THE ESTATE OF:

Allen Riley Ott
(Deceased)

NO.: 2021-PR-69
PROBATE DIVISION

## LETTERS OF ADMINISTRATION
## FOR ADMINISTRATOR AD LITEM
## FOR CAUSE OF ACTION ONLY

TO: Torie Ott _____ of ~~MCMINN~~ Bradley County:

It appearing to the Court that a Petition for Administrator Ad Litem has been filed in this matter and the Court having ordered the Letters of Administration be issued to you;

These are, therefore, to appoint and empower you for the limited purpose of cause of action to assert all claims or defense related to the debt and/or claimed obligations for the deceased at the time of his death. In addition, you are empowered to obtain any and all documents from third parties to which the deceased would have been entitled during his lifetime.

Witness __PATTY S. GAINES__, Clerk & Master of said Court, this __23rd__ day of ____, 20__21__.

__PATTY S. GAINES, C&M__, Clerk & Master
By _____, Deputy Clerk

I do solemnly swear that I will honestly and faithfully discharge the duties imposed on me by law to the best of my ability, so help me God.

(See attached Oath)

_____
Administrator Ad Litem

Sworn & Subscribed to me this _____ day of _____, 2015

_____, Clerk & Master
By_____. Deputy Clerk

STATE OF TENNESSEE
MCMINN COUNTY

I, **PATTY S. GAINES**, Clerk & Master of McMinn County, do hereby certify that the foregoing is a full, true and perfect copy of LETTERS OF ADMINISTRATION FOR ADMINISTRATOR AD LITEM, issued to __Torie Ott__ Administrator(s) Ad Litem of the Estate of __Allen Riley Ott__, deceased, and I do further certify that (he/~~she~~/~~they~~) is/~~are~~ still acting Administrator(s) Ad Litem of said estate and (~~his~~/her/~~their~~) acts as such are entitled to full faith and credit, as appears from the records in my office at McMinn County, Tennessee.

Witness my hand and official seal, at this __23rd__ day of __April__ 20__21__.

__PATTY S. GAINES, C&M__, Clerk & Master
By_____, Deputy Clerk
Page 1 of 1

Letters of Administration for Administrator Ad Litem

EXHIBIT

STATE OF TENNESSEE
COUNTY OF HAMILTON

## OATH OF ADMINISTRATOR

I do solemnly swear that Allen Riley Ott, deceased, died without leaving any lawful will, so far as I know or believe, and that I will well and truly perform all the duties of administrator of the estate of the deceased.

Lorie D. Ott

SWORN TO AND SUBSCRIBED before me this 6 day of April, 2021.

NOTARY PUBLIC

My commission expires:
2-19-2023

FILED

APR 0 7, 2021
8:59 a.m.
PATTY S. CARNES
CLERK AND MASTER
BY

| IN THE CHANCERY COURT OF MCMINN COUNTY, TENNESSEE | ORDER APPOINTING ADMINISTRATOR FOR LEGAL ACTION ONLY | PROBATE DIVISION FILE No. 2021-PR-69 |
|---|---|---|

FILED

APR 2 3, 2021

2 15 PM

PATTY C. ____

CLERK AND MASTER

BY ____

IN THE MATTER OF THE ESTATE OF
**ALLEN RILEY OTT, DECEASED**

On _April 03 2021_ [*date*], Torie Ott _____ [*Petitioner*] requested that the Court appoint Petitioner as Administrator ad Litem of this estate for the limited purpose of pursuing a legal cause of action.

It appears to the Court that Decedent died on 08-24-2020 [*date*], and that Decedent's usual place of residence at the time of death was in this county.

It further appears to the Court that no person is currently serving as Administrator or Executor for this estate; there is no other person interested in the estate or willing to serve as Administrator; and that Petitioner is ready, willing, and qualified to serve as Administrator ad litem according to law.

**THEREFORE, IT IS ORDERED THAT:**

1. Torie Ott shall serve as the Administrator ad Litem of this estate pursuant to Section 30-1-109 of the Tennessee Code Annotated and shall be issued Letters of Administration for Cause of Action Only.

2. No formal administration of this estate is or shall be required.

3. This matter shall be closed by Petitioner upon filing the appropriate **motion and** an Order with the Court.

ENTER this the 23 day of April _____, 2021.

PATTY GAINES, CLERK & MASTER
Chancellor

Page 1 of 2

EXHIBIT B

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been delivered to the below parties by placing same in the U.S. Mail and/or via Email to:

Torie D. Ott
1171 Red Hill Valley Road SE
Cleveland, TN 37323
Toridawn.to@gmail.com

Dawn Ott
2319 Clearwater Road, Apt B
Athens, TN 37303

This the 23rd day of April, 2021.

By: _Kimberly Ervin, DC_
Deputy Clerk

# CIRCUIT COURT FOR MCMINN COUNTY
## State of Tennessee

TORIE DAWN OTT, §
as next of kin and administrator and §
personal representative §
of the estate of decedent §
ALLEN RILEY OTT (Deceased), §
§ No. 2021-CV-242
§
*Plaintiff,* §
§
~v~ § **JURY DEMAND**
§
CITY OF ATHENS, *et al.,* §
§
*Defendants.* §

# SUMMONS

To: CITY OF ATHENS
c/o C. Seth Summer, City Manager for City of Athens, TN
815 No. Jackson St., Athens, TN 37303

You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for McMinn County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Circuit Court for McMinn County, Tennessee on or before **thirty (30) days** after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the ____ day of _____, 20__.

**RHONDA COOLEY, CLERK OF COURT**

By: _____
DEPUTY CLERK

Attorney for Plaintiffs:  ROBIN RUBEN FLORES
                         4110 BRAINERD ROAD, CHATTANOOGA, TN 37411

Plaintiff's Address: _____

Received this _____ day of _____, 20__.

/S/ _____
DEPUTY SHERIFF

DEFENDANT COPY

**STATE OF TENNESSEE**
COUNTY OF MCMINN

I, Rhonda Cooley, Clerk of Court, in and for the State and County aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

**RHONDA COOLEY, CLERK OF COURT**

BY: _____ D.C.

## OFFICER'S RETURN

I certify that I served this summons, together with the Complaint as follows:

❑    On, _____, 20___, I delivered a copy of the summons and Complaint to the

Defendant, _____

_____ ❑

Failed to serve this summons within 30 days because:

_____

**Joe Guy, Sheriff:**

_____
DEPUTY SHERIFF

## Clerk's Return

I hereby acknowledge and accept service of the within summons and receive copy of same, this _____ day of _____, 20____.

_____
DEFENDANT

**RHONDA COOLEY, CLERK OF COURT**

BY: _____ D.C.

## NOTICE TO DEFENDANT(S)

Tennessee law provides a four thousand ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks and other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should and of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.